**THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JESSICA RUPERT**, individually and on behalf of all others similarly situated,

Plaintiff,

v.

**LIFE LINE SCREENING OF AMERICA, LTD.**, an Ohio limited liability company,

Defendant.

Case No.:

Hon.:

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Jessica Rupert ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, hereby brings this Collective and Class Action Complaint against Life Line Screening of America, Ltd. ("Defendant") to recover unpaid overtime compensation, liquidated damages, attorney's fees, costs, and other relief as appropriate under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201, *et seq.*, and common law. Plaintiff's allegations herein are based upon knowledge as to matters relating to herself and upon information and belief as to all other matters.

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

2. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

3. The Court has supplemental jurisdiction over the asserted state/common law claims pursuant to 28 U.S.C. § 1376 because the claims are so related to the FLSA claims as to form part of the same case or controversy.

4. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

5. This Court has personal jurisdiction over Defendant because Defendant conducts business within this District and maintains its principal place of business in this District.

6. Venue lies in in this District pursuant to 28 U.S.C. §1391 (b) and (c) because the Defendant conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## PARTIES

7. Plaintiff is an adult resident of West Pointe, Mississippi and has been employed by Defendant since March 2025. Plaintiff's consent to join form is attached as **Exhibit A**.

8. Plaintiff and the putative collective members consist of current and former preventative healthcare advisors, or similar positions, who were compensated on an hourly basis, ("Advisors"). Throughout the relevant period, Defendant maintained a corporate policy and practice of failing to compensate its Advisors for all pre- and mid-shift off-the-clock work.

9. Defendant is a healthcare provider that performs preventative health screenings.[1]

10. Defendant is headquartered in Independence, Ohio and it offers its services at over 14,000 locations across the country as well as online.[2]

---

[1] lifelinescreening.com (last visited March 6, 2026)

[2] https://hearthealth.lifelinescreening.com/?utm_source=Web&utm_medium=Organic&utm_camp

11. Defendant is an Ohio limited liability company and maintains a registered agent for purposes of service as Registered Agent Solutions, Inc., 4568 Mayfield Road, Suite 204, Cleveland, OH 44121.

## STATEMENT OF FACTS

12. Plaintiff started working for Defendant as a non-exempt, hourly employee in March 2025.

13. Plaintiff works remotely as a Preventative Health Advisor for Defendant from her home in Mississippi.

14. Plaintiff's most recent hourly rate of pay was $16.00, plus a $2.00 shift differential for night-shift work, and the ability to earn discretionary, performance-based bonuses each month.

15. Plaintiff and other Advisors typically worked at least 40 hours per workweek and frequently worked overtime.

16. Defendant compensated Plaintiff and all its Advisors on an hourly basis and classified them as non-exempt employees under the FLSA.

17. Defendant failed to compensate its Advisors, like Plaintiff, for all work performed. Instead, Defendant required its Advisors to perform compensable work before and after their scheduled shifts, as well as during their designated meal periods, when they are not clocked-in to Defendant's timekeeping system. This corporate policy and practice results in Advisors not being paid for all time worked.

18. Plaintiff and other Advisors often experienced technical difficulties with Defendant's network and/or hardware laptops provided to them, which increased the amount of

---

aign=TopNav&_gl=1*1symvg3*_gcl_au*MTk1OTk0OTQ1OC4xNzcxMzQ3MDE2 (last visited March 6, 2026).

off-the-clock work took to perform each shift. In some cases, Plaintiff was forced to use her PTO due to extended-length technical issues, rather than be properly paid for her time.

19. Defendant, through its managers, had actual and constructive knowledge that its Advisors were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact, trained and required, its Advisors to complete this unpaid work.

20. Upon information and belief, Defendant also possess, controls, and/or has access to information and electronic data indicating when Plaintiff and other Advisors experience technical downtime.

21. 34. Once hired, Defendant provided Plaintiff and all Advisors training on its attendance policy; how to use Defendant's timekeeper; Defendant's schedule and adherence metrics and monitoring; and how to log in and out for each shift. Plaintiff recalls this training taking place virtually with a "class" of six or seven other new employees over the course of approximately three weeks.

22. Defendant's Advisors were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

**<u>Pre-Shift Off-the-Clock Work</u>**

23. Advisors were required to be fully logged into Defendant's computer network, customer systems, and phone systems and ready to take calls at the exact start of their scheduled shifts.

24. To meet this requirement, Advisors were required to perform pre-shift boot-up and login activities before clocking into Defendant's timekeeping system.

25. All of Defendant's Advisors use the same or similar computer networks, software, programs, and applications in the course of performing their job responsibilities. These programs

and applications are an integral and indispensable part of the Advisors' work, and they cannot perform their jobs without them.

26. The pre-shift boot-up and login process consisted of the following steps:

a. The Advisors turned on or woke up their computer;

b. The Advisors then opened Ivanti to log into Defendant's VPN;

c. The Advisors then opened Microsoft Teams software;

d. The Advisors then opened their email and internet browser;

e. The Advisors when launched their scripts, and Genesys and C-Star software applications for use with customer interactions;

f. Once all applications to be "phone ready" were opened, the Advisors would then open the timekeeping application, ADP, and log in at the start of their shift.

27. The pre-shift work activities described above took substantial time on a daily basis, ranging from five (5) to fifteen (15) minutes per shift, or more, depending on how fast/slow the computers and programs were operating.

28. Advisors who failed to complete this work before their scheduled shifts were subject to discipline for tardiness per Defendant's attendance policy.[3]

29. The pre-shift off-the-clock time Plaintiff and all other Advisors spend booting up and logging in directly benefits Defendant and is integral and indispensable to the Advisors' job responsibilities.

**<u>Mid-Shift Off-the-Clock Work</u>**

30. Defendant provided its Advisors one unpaid 30-minute meal period each eight (8) hour shift.

---

[3] Defendant did not have a reliable system for reporting the need for sick leave, which caused Plaintiff and other Providers to be written up for absences that were excused. This in turn impacted Plaintiff and the Providers' ability to meet the goals outlined to receive their monthly bonus pay. Plaintiff raised this issue with her manager, McKenna Amsrong, but it was never addressed.

31. However, Defendant did not provide Advisors with legitimate bona fide meal periods because it required its Advisors to return to their computers prior to the end of their unpaid meal periods and log back in so they could resume taking calls the moment their meal periods ended.

32. This process was similar to the pre-shift login process described above (albeit abbreviated), and this time went unpaid.

33. Advisors spend approximately three (3) minutes per shift performing this work during their unpaid meal periods. Thus, Defendant maintained a common practice, plan and policy pursuant to which it failed to pay Advisors for work performed during their meal periods.

**Defendant Benefitted from the Uncompensated Off-the-Clock Work**

34. At all relevant times, Defendant required and directly benefited from the off-the-clock work performed by Plaintiff and all other Advisors in connection with the pre- and mid-shift activities described above.

35. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Advisors.

36. At all relevant times, Defendant was able to track the amount of time Plaintiff and all other Advisors spend in connection with pre- and mid-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other Advisors for the off-the-clock work they performed.

37. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the other Advisors in order to pressure them into performing pre- and mid-shift work off-the-clock.

38. For example, Defendant's monthly bonus factored in Advisors' attendance, which

was impacted by the Advisors' ability to be "ready to work" exactly at the start of their scheduled shifts.

39. Because Plaintiff and all other Advisors typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

40. Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff and the Advisors worked over 40 hours and exactly which weeks they worked under 40 hours.

41. Defendant knew or should have known that the time spent by Plaintiff and other Advisors in connection with the off-the-clock pre- and mid-shift activities is compensable under the law.

42. Despite knowing Advisors performed off-the-clock work before, during, and after their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

## FLSA COLLECTIVE ACTION ALLEGATIONS

43. Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of herself and on behalf of all Defendant's current and former Advisors, or similar customer service positions who worked for Defendant in the United States at any time in the past three years (hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

44. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

45. Plaintiff and putative Collective Members are "similarly situated" as that term is used in 29 U.S.C § 216(b) because, among other things, all such individuals were subject to

Defendant's pre- and mid-shift off-the-clock work but such pay was not calculated as part of their regular rate as required by the FLSA.

46. Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

47. All of the pre- and mid-shift off-the-clock work Plaintiff and the proposed FLSA Collective performed was required by Defendant, and/or Defendant was aware of all of the pre- and mid-shift off-the-clock work the Plaintiff and the proposed FLSA Collective performed.

48. Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

49. As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b. Willfully failing to pay overtime gap time for those unpaid hours under 40 associated with unpaid overtime;

c. Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant; and

d. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for off-the-clock work, including the pre-shift boot-up and mid-shift login time.

50. Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

51. Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

52. Resolution of this action requires inquiry into common facts.

53. These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

54. Court-authorized notice pursuant to 29 U.S.C § 216(b) is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail and/or other means including email and text messaging and allowed to opt in for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

55. Upon information and belief, there are hundreds of similarly situated current and former employees of Defendant who were not paid their required wages and who would benefit from the issuance of court-authorized notice of this lawsuit and the opportunity to join it.

**RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

56. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former similarly situated Advisors and similar customer service positions who work or worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

57. The members of the Rule 23 Nationwide Class are so numerous that joinder of all

Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

58. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spend on startup and login activities each shift is compensable;

b. Whether the mid-shift time Rule 23 Nationwide Class members spend on login activities each shift is compensable;

c. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

d. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

59. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

60. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

61. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

62. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

63. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

64. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. – FAILURE TO PAY OVERTIME**
**(29 U.S.C. § 216(b) Collective Action)**

65. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

66. Plaintiff was an employee within the meaning of 29 U.S.C C 203(e).

67. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq.*

68. At all times relevant to this action, Defendant was engaged in interstate commerce,

or in the production of goods for commerce, as defined by the FLSA.

69. Defendant is an employer within the meaning of 29 U.S.C § 203(d).

70. At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

71. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

72. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

73. Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

74. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

75. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

76. At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiff and all putative collective members the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

77. At all times relevant to this action, Defendant required Plaintiff and all others similarly situated to regularly perform five (5) to fifteen (15) minutes or more of pre-shift computer

boot-up and login time and approximately three (3) minutes of mid-shift login time, but failed to pay these employees the federally mandated overtime compensation for all services performed.

78. In workweeks where Plaintiff and others putative Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including on-call pay where applicable. 29 U.S.C. § 207.

79. As a result of Defendant's willful failure to compensate Plaintiff and the putative collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

80. Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

81. Plaintiff and all others similarly situated are entitled to backpay as well as liquidated damages in an amount equal to their backpay. As a result of Defendant's FLSA violations, Plaintiff and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

**COUNT II**
**BREACH OF CONTRACT**

**(On Behalf of the Rule 23 Nationwide Class)**

82. Plaintiff re-alleges and incorporates all previous paragraphs herein.

83. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

84. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for hourly work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

85. Defendant breached its contractual promises by failing to pay Plaintiff and the Rule 23 Nationwide Class at their fixed, pre-agreed upon hourly rate for all of the hours worked.

86. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contracts by doing their jobs and carrying out the work they performed each shift described herein.

87. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift described herein, Defendant systematically breached their contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

88. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint in conjunction with Defendant's payroll records.

89. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

90. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of the Rule 23 Nationwide Class)**

91. Plaintiff re-alleges and incorporates all previous paragraphs herein.

92. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

93. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

94. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

95. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

96. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

97. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

98. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

99. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

100. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

a. An Order authorizing Court Supervised Notice pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendant to provide Plaintiff a list of all proposed Collective Members who work or have worked for Defendant at any time in the past three years. This list shall include the last known addresses, emails, and telephone number of each such person, so that Plaintiff can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate;

b. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's common law claims (Counts II an dIII);

d. An Order designating the Plaintiff as representative of the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

e. An Order declaring that Defendant's violations of the FLSA were willful;

f. An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

g. An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

h. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

i. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

j. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and;

k. An Order awarding such other and further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Date: April 22, 2026

Respectfully submitted,

*/s/ Paulina R. Kennedy*

Paulina R. Kennedy (MI Bar No. P84790)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, MI 48076
Tel: (248) 746-4055
pkennedy@sommerspc.com

*Attorneys for Plaintiff and the Putative Collective/Class Members*